ORIGINAL

Approved: _____/s/_____
           JUSTIN V. RODRIGUEZ
           Assistant United States Attorney

Before:  THE HONORABLE KEVIN NATHANIEL FOX
         United States Magistrate Judge
         Southern District of New York

**19MAG 4146**

\- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

JOHN MICHAEL TEDESCO,

    Defendant.

\- - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violations of
21 U.S.C. §§ 812, 841,
846, and 18 U.S.C. § 2

SOUTHERN DISTRICT OF NEW YORK, ss.:

    MARK I. RUBINS, being duly sworn, deposes and says that he is a Task Force Officer with the Federal Bureau of Investigation ("FBI") and charges as follows:

### COUNT ONE
### (Narcotics Conspiracy)

    1.  From at least on or about November 10, 2013, up to and including at least in or about July 2014, in the Southern District of New York and elsewhere, JOHN MICHAEL TEDESCO, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2.  It was a part and an object of the conspiracy that JOHN MICHAEL TEDESCO, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

    3.  The controlled substances that JOHN MICHAEL TEDESCO, the defendant, conspired to distribute and possess with intent to distribute were (a) 100 grams and more of mixtures and

substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B); and (b) a quantity of mixtures and substances containing a detectable amount of alprazolam, in violation of Title 21, United States Code, Section 841(b)(2).

(Title 21, United States Code, Section 846.)

## COUNT TWO
### (Trafficking Narcotics over the Internet)

4.   From at least on or about November 10, 2013, up to and including at least in or about July 2014, in the Southern District of New York and elsewhere, JOHN MICHAEL TEDESCO, the defendant, delivered, distributed, and dispensed controlled substances by means of the Internet, in a manner not authorized by law, and aided and abetted such activity, in violation of Title 21, United States Code, Section 841(h).

5.   The controlled substances that JOHN MICHAEL TEDESCO, the defendant, delivered, distributed, and dispensed by means of the Internet, were (a) 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B); and (b) a quantity of mixtures and substances containing a detectable amount of alprazolam, in violation of Title 21, United States Code, Section 841(b)(2).

(Title 21, United States Code, Sections 812, 841(h), 841(b)(1)(B) & (b)(2); Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6.   I am a New York City Police Department ("NYPD") Detective and have been with the NYPD since 2006. I have been assigned as a Task Force Officer with the FBI's Cyber Crime Task Force since 2017, and I have been personally involved in the investigation of this matter. The information contained in this Complaint is based upon my personal knowledge and participation in this investigation, as well as on my conversations with other law enforcement agents and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the course of my investigation. Where the

contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

### Terminology

7. Based on my training, research, education, and experience, I am familiar with the following relevant terms:

a. The "dark web" is a colloquial name for a number of extensive, sophisticated, and widely used criminal marketplaces operating on the Internet, which allow participants to buy and sell illegal items, such as drugs, firearms, and other hazardous materials with greater anonymity than is possible on the traditional Internet. These online black market websites use a variety of technologies, including the Tor network (defined below) and other encryption technologies, such as encryption keys, to ensure that communications and transactions are shielded from interception and monitoring. A famous dark web marketplace, Silk Road, operated similar to legitimate commercial websites such as Amazon and eBay, but offered illicit goods and services. Law enforcement shut down Silk Road in 2013, but in its place, newer dark web markets have emerged.

b. "Vendors" are the dark web's sellers of goods and services, often of an illicit nature, and they do so through the creation and operation of "vendor accounts." Customers, meanwhile, operate "customer accounts." It is possible for the same person to operate one or more customer accounts and one or more vendor accounts at the same time.

c. The "Tor network," or simply "Tor," is a special network of computers on the Internet, distributed around the world, that is designed to conceal the true Internet Protocol ("IP") addresses of the computers accessing the network, and, thereby, the locations and identities of the network's users. Tor likewise enables websites to operate on the network in a way that conceals the true IP addresses of the computer servers hosting the websites, which are referred to as "hidden services" on the Tor network. Such "hidden services" operating on Tor have complex web addresses, generated by a computer algorithm, ending in ".onion" and can only be accessed through specific web browser software,

including a major dark-web browser known as "Tor Browser," designed to access the Tor network.

d. "Bitcoin" (or "BTC") is an online digital currency that allows users to transfer funds more anonymously than would be possible through traditional banking and credit systems. Users store their Bitcoins in digital "wallets," which are identified by unique electronic "addresses." Although they are legal and have known legitimate uses, Bitcoins are also known to be used by cybercriminals for money-laundering purposes, and are believed to be the most oft-used means of payment for illegal goods and services on "dark web" websites operating on the Tor network. By maintaining multiple Bitcoin wallets, those who use Bitcoins for illicit purposes can attempt to thwart law enforcement's efforts to track purchases within the dark web marketplace.

### Overview

8. Since at least in or about July 2013, up to and including in or about at least July 2014, JOHN MICHAEL TEDESCO, the defendant, has distributed controlled substances over the dark web via the United States mail. During this time, TEDESCO advertised the sale of controlled substances, including heroin and Xanax, on vendor pages he operated on various dark web markets. Customers placed orders on these dark web markets, and TEDESCO fulfilled the orders. TEDESCO was paid for these sales in Bitcoins or other digital currencies.

### JOHN MICHAEL TEDESCO Operated on Silk Road 1.0 as a Vendor Using the Moniker "nowthatsthestuff"

9. Based on my participation in this investigation, my training and experience, my conversations with other law enforcement agents, and my review of Internet websites used to conduct narcotics trafficking, I have learned, among others things, that, in or about October 2013, the Silk Road, a dark web market, later sometimes referred to as "Silk Road 1.0" or "SR1," was shut down by law enforcement. Prior to its closing, law enforcement took control of the Silk Road and collected a large volume of data regarding the Silk Road's users (the "Silk Road 1.0 Data").

10. Based on my review of the Silk Road 1.0 Data, I have learned, among other things, that:

4

a. A particular vendor with the account name "nowthatsthestuff" (created on or about July 26, 2013) maintained a vendor account on Silk Road 1.0. "nowthatsthestuff" sold controlled substances, predominantly heroin, on Silk Road 1.0 and was paid in Bitcoins for these sales.

b. Between July 2013 and October 2013, "nowthatthestuff" fulfilled at least 200 orders for various amounts of heroin on Silk Road 1.0. Listing titles included "NYC HEROIN STAMPS 10 BAGS+2 FREE," "HALF A GRAM OF NYC'S FINEST," "1 gram of NYC's STRONG BATCH."

c. In a message sent on or about August 16, 2013 to vendor support for Silk Road 1.0, "nowthatsthestuff" wrote, in sum and substance, that he had a particular buyer account with the Silk Road with the name "NTTS," which appears to be an acronym for "nowthatsthestuff."

d. "NTTS" was created on or about August 13, 2013. Silk Road 1.0 transaction records show that "NTTS" and "nowthatsthestuff" shared a Bitcoin withdrawal address, which indicates that the two accounts were linked.

e. On or about August 19, 2013, "NTTS" sent a message to another user identifying "nowthatsthestuff" as "NTTS"s vendor account.

f. On or about September 26, 2013, NTTS sent a message to a vendor, which said, in substance and in part, that his name was "John Tedesco." NTTS also provided a particular address in Queens, New York ("Residence-1").

g. On or about August 23, 2013, "nowthatsthestuff" sent a message to another Silk Road 1.0 user that stated, in sum and substance, that "NTTS" is "nowthatsthestuff"'s buyer account.

h. On or August 25, 2013, NTTS sent a message to another vendor in which NTTS provided the name "John Tedesco" and the address for Residence-1 and stated: "Please delete this and lmk [let me know] when u get the address plz so I can delete it."[1]

---

[1] Messages quoted in this Complaint include any original misspellings or other errors.

5

          i.   On or about August 31, 2013, "nowthatsthestuff" received a message from another user ("User-1") with the subject "Bomb ass product" that said:" "I received my package in the mail yesterday around noon, and I just wanted to let you know that I couldn't be happier. Everything went as expected, and shit, dude. Your dope is awesome man! Really good shit. Gives off a great euphoric body high that I haven't gotten from H in a while." Based on my training and experience, and my involvement in this investigation, I believe that the term "H" is a reference to heroin, and that in this message, User-1 is expressing satisfaction with the quality of heroin that JOHN MICHAEL TEDESCO, the defendant, using the vendor account "nowthatsthestuff," had provided.

### JOHN MICHAEL TEDESCO Operated on Silk Road 2.0 as a Vendor Using the Moniker "nowthatsthestuff"

          11.   Based on my participation in the investigation, my training and experience, my conversations with other law enforcement agents, and my review of Internet websites used to conduct narcotics trafficking, I have learned, among other things, that:

          a.   Silk Road 2.0 was created several weeks after law enforcement's seizure in October 2013 of the Silk Road 1.0 website and the arrest of its owner and operator, Ross William Ulbricht, a/k/a the "Dread Pirate Roberts."[2]  Like the original website, Silk Road 2.0 was designed to enable users anywhere in the world to buy and sell illegal drugs and other illicit goods and services anonymously and beyond the reach of law enforcement. Silk Road 2.0 was virtually identical to Silk Road 1.0 in its appearance and functionality, operated exclusively on the "Tor" network, and required all transactions to be paid for in Bitcoins.

          b.   In or about October 2014, Silk Road 2.0 was shut down by law enforcement.  Prior to its closing, law enforcement took control of Silk Road 2.0 and collected a large volume of data regarding Silk Road 2.0's users (the "Silk Road 2.0 Data").

---

[2] On May 29, 2015, Ulbricht was sentenced to a term of life imprisonment, following his conviction at trial in the Southern District of New York for, among other things, narcotics trafficking.

6

c. During the one year that Silk Road 2.0 was in operation, the website was used by thousands of drug dealers and other unlawful vendors to distribute hundreds of kilograms of illegal drugs and other illicit goods and services to over a hundred thousand buyers throughout the world. Silk Road 2.0 charged a commission for every transaction conducted by its users. At times, there was a flat rate on all transactions; at other times, the rate varied depending on the size of the sale.

12. Based on my review of the Silk Road 2.0 Data, I have learned, among other things, that:

a. A particular vendor with the account name "nowthatsthestuff" (created on or about November 10, 2013) maintained a vendor account on Silk Road 2.0. "nowthatsthestuff" sold controlled substances, predominantly alprazolam (under the brand name "Xanax") and heroin, on Silk Road 2.0 and was paid in Bitcoins for these sales.

b. Between June 2014 and July 2014, "nowthatsthestuff" fulfilled[3] over 300 orders for various quantities of heroin and Xanax on Silk Road 2.0. Listing titles for fulfilled orders included "1 GRAM OF NYC's FINEST #4 HEROIN" as well as "xanax bars." Based on my review of fulfilled orders that refer to specific gram weights of heroin in their listing titles, I have learned that "nowthatsthestuff" sold over 100 grams of heroin on Silk Road 2.0.

13. Based on my review of the Silk Road 2.0 Data, I have learned, among other things, that "nowthatsthestuff" exchanged multiple messages with multiple buyers regarding the sale by "nowthatsthestuff" of narcotics over Silk Road 2.0 Data. For example:

---

[3] I believe these orders were actually fulfilled based on, among other things, (i) my review of Silk Road 2.0 Data which shows the Bitcoins paid to "nowthatsthestuff" for these orders, and (ii) my review of Silk Road 2.0 Data which shows the users who placed these orders providing positive feedback to "nowthatsthestuff" about the narcotics they received, which feedback, under the strictures of the Silk Road 2.0 website, could only be provided after a user confirms receipt of what that user had ordered.

7

i.   In or about June 7, 2014, "nowthatsthestuff" sent messages to multiple users, which messages stated, among other things:

ii.   "so I gotta make sure that people get the old NTTS back up to #1 where I used to be on SR1;"

iii.   "Im a old SR1 vendor taking my number 1 place;" and

iv.   "im so excited it took 7 months for them to finally find my old sr1 profile. I cant wait to take back my #1 spot back."

Based on my training and experience, and my involvement in this investigation, I believe that "SR1" is a reference to Silk Road 1.0 and "NTTS" is a reference to the NTTS account used on Silk Road 1.0 and discussed above. See supra ¶ 10. I therefore believe that these messages indicate that the user of "nowthatsthestuff" on Silk Road 2.0 was also the user of "nowthatsthestuff" on Silk Road 1.0—i.e., JOHN MICHAEL TEDESCO, the defendant.

b.   On June 17, 2014, June 21, 2014, and June 27, 2014, "nowthatsthestuff" sent messages to multiple users, which messages stated, among other things:

i.   "I have 30 people who go to a doc that gives 180 to ea plus my best friend own a pharm and I buy their scripts;"

ii.   "well just to let you know that I have maybe 500 left from xk and the rest are from the pharmacy best friend owns one;" and,

iii.   "but I have a dirty pharmacy that's why I can get so many pills so not pressed the real deal."

Based on my training and experience, and my involvement in this investigation, I believe that these messages indicate that "nowthatsthestuff" illicitly obtained Xanax pills from a pharmacist and from other individuals who obtained Xanax prescriptions, and later sold those pills on Silk Road 2.0.

c.   On or about June 13, 2014, and July 7, 2014, the user of an account on Silk Road 2.0 ("Buyer-1") purchased five orders of "1 Single Bag of NYC's FINEST HEROIN" and one order of

"1 GRAM OF NYC'S FINEST #4 HEROIN" from "nowthatsthestuff." For both orders, Buyer-1 provided "nowthatsthestuff" with a delivery address in Cuddebackville, New York.

       d.  On or about June 25, 2014, the user of another account on Silk Road 2.0 ("Buyer-2") sent "nowthatsthestuff" a message that said: "I just put order 2 bags of sample. Im from NYC too. I wonder if it is okay just order 2 bags for sample now before I will be life customer." Transaction data from Silk Road 2.0 shows that Buyer-2 made a purchase from "nowthatsthestuff" of two "1 single bag of NYC'S FINEST HEROIN" on June 25, 2014, and provided a shipping address on Wall Street in New York, New York.

       e.  On or about July 1, 2014, "nowthatsthestuff" sent a message to Buyer-2 that said: "youll get it weds bc it only takes a day buddy." The message also included what appears to be a signature line that says: "NTTS AKA USA's #1 WHITE #4 HEROIN VENDOR N THE UPCOMING XANAX KING."

       f.  On or about July 3, 2014, Buyer-2 sent "nowthatsthestuff" a message which said: "I got all two mails in the same time. You are really the BEST!! the 1g other only take one day. I know we are in the same city but I appreciate your quick process." The message also stated: "I was a lil bit worried before because the sample take one weeks but now i REALLY believe NTTS is the Best Vendor." Based on the listing title, "1 single bag of NYC'S FINEST HEROIN," and the references in the messages between Buyer-2 and "nowthatsthestuff" to "bags" and "1g," I believe that Buyer-2 purchased heroin from "nowthatsthestuff."

    14.  Based on my review of Con Edison records, I have learned, among other things, that:

       a.  "John Tedesco" was the customer name associated with the Con Edison account for Residence-1 from at least July 24, 2013 through at least October 22, 2013, which, as discussed above. As discussed above, NTTS provided Residence-1 as an address in messages to other vendors on Silk Road 1.0 in at least 2013. See *supra* ¶ 10.

       b.  A particular email address that included the name "John M Tedesco" (the "Tedesco Email Address") was listed as the email address for the Con Edison account associated with Residence-1.

9

15. Based on my review of records produced by the service provider for the Tedesco Email Address, including email header information (e.g., information from the "to" and "from" fields of emails sent or received by the Tedesco Email Address), I have learned, among other things, that:

  a. "John Tedesco" is the listed name associated with the Tedesco Email Address.

  b. From approximately October 2016 to approximately December 2018, the Tedesco Email Address received (i) approximately 293 emails from email addresses associated with "endicia.com," which I know from open source information is an internet postage service provider that allows customers to print their own postage; and (ii) approximately 253 emails from email addresses associated with the United States Postal Service. Based on the foregoing, my training and experience, and my involvement with this investigation, I believe JOHN MICHAEL TEDESCO, the defendant, was packaging and shipping narcotics to customers using the United States Postal Service.

16. Based on my review of records produced by Instagram, I have learned, among other things, that:

  a. A particular Instagram account (the "Tedesco Instagram Account") is registered to the Tedesco Email Address.

  b. The profile picture associated with the Tedesco Instagram Account as well as other pictures posted by the Tedesco Instagram Account depict a person who appears to be JOHN MICHAEL TEDESCO, the defendant. Specifically, I performed surveillance of a residence in Howard Beach, New York (the "Howard Beach Residence"), which I know to be the residence of TEDESCO's parents. During that surveillance, I observed an individual exit the Howard Beach Residence who appeared to be the same individual depicted in the Tedesco Instagram Account profile picture and in the photographs posted by Tedesco Instagram Account.

  c. On or about May 2, 2013, the Tedesco Instagram Account posted a photograph with the caption, "True friends share their Xanax prescriptions."

17. Based on my review of records produced by Twitter, I have learned, among other things, that:

a.  A particular Twitter account (the "Tedesco Twitter Account") is registered to the Tedesco Email Address.

b.  On or about May 26, 2014, the Tedesco Twitter Account tweeted a photograph with the caption that included, "Thanks dad," and which depicted an adult male. The male in that photograph appears to be another individual I observed exiting the Howard Beach Residence on or about December 28, 2018, and whom I believe based on the foregoing is the father of JOHN MICHAEL TEDESCO, the defendant.

c.  On or about March 18, 2012, the Tedesco Twitter Account tweeted a photograph of a dog and a person who appears to be TEDESCO with the caption "Me and my dads dog spunky!"

18.  Based on my training and experience, and my involvement in this investigation, including my discussions with other members of law enforcement, I have learned, among other things, that PGP (Pretty Good Privacy) is an encryption program that provides security and authentication for data communication. PGP encryption consists of both a public and private key. The public key is publicly shared to facilitate communication and encrypt the information, and a private key is maintained by the owner of the PGP account in order to decrypt the information, including the transfer of funds via cryptocurrency. PGP keys are randomly generated upon request of a PGP key.

19.  Based on my search of an open-source PGP search tool, I have learned, among other things, that the Tedesco Email Address is the user ID associated with a particular public PGP key (the "Tedesco Public PGP Key"). A second email address beginning with "nowthatsgood@" (the "nowthatsgood@ Email Address") is also associated with the Tedesco Public PGP Key.

20.  Based on my review of the Silk Road 2.0 Data, I have learned, among other things, that on or about June 19, 2014, nowthatsthestuff sent a message to another Silk Road 2.0 user ("User-2"), which stated, in part, "I will compensate you for this bc its not fair to you...i have hired a team so there is no more delays in shipping same day comes in same day goes out so please email me @ [the nowthatsgood@ Email Address] with your info pgp of course....." Based on my training and experience, and my involvement in this investigation, I believe that (i) the message quoted above indicates that "nowthatsthestuff" is also the user of the nowthatsgood@ Email Address, and (ii) "nowthatsthestuff" is

asking User-2 to provide User-2's public PGP key ("email me ... with your info pgp of course") so that "nowthatsthestuff" can securely transfer Bitcoins, or some other cryptocurrency, to User-2 to compensate User-2 for a delay in the shipping of narcotics to User-2.

21. Based on the foregoing, and my training and experience and involvement in this investigation, I believe that JOHN MICHAEL TEDESCO, the defendant, was the user of "nowthatsthestuff" and "NTTS" on Silk Road 1.0, "nowthatsthestuff" on Silk Road 2.0, the Tedesco Email Address, the Tedesco Public PGP Key, and the nowthatsgood@ Email Address.

WHEREFORE, I respectfully request that JOHN MICHAEL TEDESCO, the defendant, be imprisoned, or bailed, as the case may be.

MARK I. RUBINS
Task Force Officer
Federal Bureau of Investigation

Sworn to before me this
29th day of April, 2019

THE HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK